# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BOBBI J. HUMMEL,                  :
                                  :
          Plaintiff,              :      No. 3:19-cv-00956
                                  :
     v.                           :      (SAPORITO, M.J.)
                                  :
ANDREW SAUL,[1]                   :
Commissioner of                   :
Social Security,                  :
                                  :
          Defendant.              :

## MEMORANDUM

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Bobbi J. Hummel's ("Hummel") claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9, Doc. 10, Doc. 11). For the reasons stated herein, we respectfully recommend that the decision of the Commissioner be **AFFIRMED**.

## I.    *Background and Procedural History*

Hummel is an adult individual born July 4, 1975, who was 34 years old at the time of her alleged onset date of disability—March 1, 2010. (Tr. 99). Hummel's age at the onset date makes her a "younger person" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c). Hummel graduated from high school in 1993 and has no specialized vocational training. (Tr. 159). Prior to her alleged onset date, Hummel worked as a custodial laborer, fast food worker, and housekeeper. (Tr. 167). On September 20, 2016, Hummel protectively filed for disability benefits pursuant to Title II of the Social Security Act. (Tr. 55). In her application, Hummel alleged that she became disabled beginning March 1, 2010, as a result of irregular menstruation, vertigo, syncope, pilonidal cyst with abscess, B-neoplasm, large intestine, gastrointestinal hemorrhage NOS, aphasia, migraine with aura, hypothyroid, and post-concussion syndrome. (Tr. 158). Hummel's claim was initially denied on December 5, 2016. (Tr. 55). Thereafter, Hummel filed a timely request for an administrative hearing

on December 29, 2016, and it was granted. (*Id*.). Hummel, represented by counsel, appeared and testified before ALJ, Paula Garrety, on April 9, 2018, in Wilkes Barre, Pennsylvania. (Tr. 55, 71). In addition, an impartial vocational expert ("VE"), Carolyn Rutherford, and her husband, Brian Hummel, also appeared and testified during the administrative hearing. (Tr. 71). At the time of the hearing, Hummel was 43 years old and resided with her family in Clinton County, which is in the Middle District of Pennsylvania. (Tr. 99).

In a written decision dated May 30, 2018, the ALJ denied Hummel's application for benefits. (Tr. 52). Hummel sought further review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied for review on April 12, 2019. (Tr. 1). Hummel subsequently filed an appeal to the U.S. District Court for the Middle District of Pennsylvania on June 4, 2019, arguing that the ALJ's decision was not supported by substantial evidence. (Doc. 1). On August 15, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's decision was correct and in accordance with the law and regulations. (Doc. 7, at 3). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 12; Doc. 15).

On this score, Hummel's treatment history discloses that Hummel has a long history of post concussive syndrome, primarily beginning with a motor vehicle accident in October 2009. (*Id.*). Hummel, however, was involved in a prior motor vehicle accident in 1999 and reported having overall, "two to three concussions." (*Id.*). In March 2010, Hummel underwent a neuropsychological evaluation, which demonstrated impairments on three separate tests designed to measure attention and concentration and showed some cognitive decline. (*Id.*). In March and April 2010, Hummel presented to Geisinger Medical Center with a headache, slurred speech, and right-sided weakness. (Tr. 270, 276). An electroencephalogram (EEG) study was also performed, which Hummel's physician described as "very reassuring" showing only slight tonsillar etopia, and not significant enough to be called Chiari malformation. (Tr. 268). Despite relatively normal imaging and normal EMG and EEG studies, Hummel continued to complain of intense pain "all over" and problems with her memory. (Tr. 264, 269). In May 2010, Hummel reported headaches three to four times per week despite treating with medication. (Tr. 264). Upon mental status examination, however, Hummel demonstrated goal directed speech, a short attention span, and

was of average intelligence with fair insight and judgment. (Tr. 263).

In June 2010, Hummel was examined by Dr. Jenice Robinson ("Dr. Robinson"), a treating physician, who opined that Hummel had issues that were likely to last greater than one year and that she was not certain if she would be able to return to work "at this point." (Tr. 524). In October 2010 and January 2011, Dr. Michael Driscoll ("Dr. Driscoll")—Hummel's treating neuropsychologist, completed a neuropsychological report. (Tr. 246-52, 574-79). In the report, Dr. Driscoll stated that "Mrs. Hummel is incapacitated from psychological concerns to the extent that she will miss days of work, she will be inconsistent in her productivity, unreliable in her emotional responses under pressure, and will not be accountable to the demands of a full-time job." (Tr. 246-52, 574-79). Dr. Driscoll further stated that "based on the data, Mrs. Hummel is experiencing deterioration in her functioning that may have primary psychiatric roots. Nonetheless, [Hummel] will need time and opportunity to constructively engage in treatment that may result in short-term increased instability[,] but long-term gains." (Tr. 246-52, 574-79).

In July 2010, however, Hummel underwent another EEG study, which revealed normal findings. (Tr. 259). In August 2010, Hummel

complained of pain and cognitive issues, but reported that she "felt good cognitively" when taking her medication. (Tr. 255). Additionally, a contemporaneous physical examination demonstrated that Hummel had a decreased attention span and concentration, but otherwise was within normal limits. (Tr. 256). In September 2010, seven months after her last evaluation, Hummel's treating psychologist conducted an updated neuropsychological evaluation and indicated in the treatment notes that Hummel's "pattern of complaints appeared to exceed the severity of the original injury in 2009." (Tr. 254). In October 2010, a Halstead Impairment Index test was within normal range and other testing was within the above average range. (Tr. 248).[2] Again, Hummel was noted to be experiencing deterioration in her functioning that may have psychiatric roots and it was recommended that she engage in therapeutic counseling. (*Id.*). In November 2010, Hummel visited Geisinger Neurology for a chief complaint of post concussion syndrome. (Tr. 584). The treatment notes indicated some attentional problems, but noted some improvements with the drug Adderall, a combination medication

---

[2] The Halstead Impairment Index is a summary index of brain damage that is derived from seven of the core test scores from the Halstead-Reitan Neuropsychological Battery (HRNB).

used to treat attention deficit hyperactivity disorder (ADHD). (*Id.*). The medical record reflects that Hummel noted some improvement in her attentional problems with the medication. (Tr. 242, 584). Hummel did not return to neuropsychology again until August 2012, when she reported depressed mood and trouble with concentration. (Tr. 236-37).

The medical record also reflects a history of depression, for which Hummel's neurologist recommended therapeutic counseling. (Tr. 248). Hummel, however, noted that her medication was starting to help, and the record does not reflect that Hummel attended either inpatient or outpatient mental health therapy. (Tr. 62, 400). Additionally, the medical record reflects a history of degenerative disc disease and osteoarthritis. (Tr. 62). In longitudinal records from Hummel's primary care physician, Hummel's chronic pain was noted to be "fairly well controlled" with medication. (Tr. 376, 398). Further, physical examinations demonstrated that Hummel had normal range of motion and muscle strength and stability in all extremities with no pain on inspection. (Tr. 393). Moreover, imaging of Hummel's cervical spine revealed normal findings with minimal spondylosis at the T12-L1 level. (Tr. 219, 848). During routine visits in September 2012, Hummel complained of arthralgia and

joint pain, back pain and muscle weakness, but upon examination she demonstrated normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Tr. 370-77).

In November 2016, Dr. Minda Bermudez ("Dr. Bermudez") reviewed the record at the request of the State agency at the initial level of review. (Tr. 63). Upon review, however, Dr. Bermudez opined that Hummel was capable of performing no more than light work with unlimited pushing and pulling. (Tr. 105). Dr. Bermudez further opined that Hummel could frequently perform postural maneuvers and that she should avoid concentrated exposure to vibration. (Tr. 105-06). In December 2016, Dr. Stephen Timchack ("Dr. Timchack") was asked to review the record at the request of the State agency at the initial level of review. (Tr. 102-03). In doing so, Dr. Timchack opined that Hummel had no limitations in any one area of mental functioning. (Tr. 103).

## II.   *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d

198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[3] that makes it impossible to do his or her

---

[3] A "physical or mental impairment" is an impairment resulting from

previous work or any other substantial gainful activity[4] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a); *Id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[5] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[6] and (5) whether the claimant is able to do any other work,

---

"anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *Id.* § 1382c(a)(3)(D).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

[5] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the

considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *Id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *Id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *Id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Id.* § 416.912(f); *Mason*, 994 F.2d at 1064.

## III. *Discussion*

In her May 2018, decision denying Hummel's claim for benefits, the ALJ evaluated Hummel's application for benefits at each step of the sequential evaluation process. In that decision, the ALJ first concluded that Hummel had met the insured status requirements of the Social Security Act on December 31, 2015. (Tr. 57). At step one, the ALJ

---

Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

concluded that Hummel had not engaged in substantial gainful activity from her alleged onset date of March 1, 2010, through her date last insured of December 31, 2015. (*Id.*). At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: osteoarthritis, degenerative disc disease, post-concussive syndrome, and depression. (*Id.*).

At step three, the ALJ found that Hummel did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 58). Between steps three and four, the ALJ fashioned an RFC considering Hummel's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Hummel] has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b), except [Hummel] must be afforded the opportunity to alternate positions occasionally. [Hummel] should not be exposed to heights, hazards, or vibrations. [Hummel] should not be exposed to loud noises such as loud traffic. [Hummel] is limited to work that does not involve detailed instructions, [Hummel] is confined to routine repetitive tasks, in jobs with few work changes and no more than occasional contact with the public and coworkers.

(Tr. 60).

At step four, the ALJ found that Hummel was unable to perform any past relevant work. (Tr. 65). At step five, the ALJ determined that based on Hummel's age, education, work experience, and RFC that there were a significant number of jobs in the national economy that she could perform, including working in a range of assembly work, packing positions, and bench work positions. (Tr. 66).

Hummel contends that the decision of the ALJ is not supported by substantial evidence of record and raises three issues on appeal attacking various aspects of the ALJ's decision. We shall address each argument seriatim.

### A. The ALJ's Step Two Evaluation is Supported by Substantial Evidence and Any Alleged Error is Harmless on These Facts

Hummel's first claim of error, challenges the ALJ's step two evaluation. Specifically, Hummel argues that the ALJ erred in failing to find her reported carpal tunnel syndrome, chronic migraine headaches, and fibromyalgia severe impairments. (Doc. 12, at 4). In doing so, Hummel contends that the ALJ failed to include functional restrictions for her upper extremities in the hypothetical questions posited to the VE. (*Id*.). Thus, this caused the VE to offer three classes of jobs, which require

frequent, if not continuous, use of her upper extremities. (*Id.*).

In response, the Commissioner argues that at the outset of her application, Hummel never alleged fibromyalgia or carpal tunnel syndrome as impairments that limited her ability to work. (Doc. 15, at 9). The Commissioner further contends that as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe. (Doc. 5, at 11). Therefore, because Hummel's claim was not denied at step two, even if the ALJ should have found Hummel's headaches, carpal tunnel syndrome, and fibromyalgia to be severe impairments, the ALJ continued the evaluation of her claim. (*Id.*). Thus, any possible error is harmless. (*Id.*).

At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality or a combination of slight abnormalities which would have

no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. *Bowen*, 482 U.S. at 146.

Here, we find that the ALJ's step two evaluation is supported by substantial evidence. At step two, the ALJ considered all of Hummel's alleged impairments, including her irregular menstruation, vertigo, syncope, pilonidal cyst with abscess, B-neoplasm, large intestine, gastrointestinal hemorrhage NOS, aphasias, migraine with aura, hypothyroid, and post-concussion syndrome. (Tr. 158). The ALJ, however, concluded that through the date last insured, Hummel had the following severe impairments: osteoarthritis, degenerative disc disease, post-concussive syndrome, and depression. (Tr. 57). The ALJ then went on to conclude that Hummel had two nonsevere impairments, one of which being carpal tunnel syndrome. (Tr. 57-58). In forming this determination, the ALJ considered Hummel's treatment records and

testimony concerning her activities of daily living, which demonstrated that Hummel's carpal tunnel syndrome did not result in more than a minimal impact on Hummel's ability to perform work-related activities. The ALJ reasoned that while Hummel alleged at her disability hearing that she suffered from mild carpal tunnel syndrome, all the EEG studies revealed normal findings. (Tr. 60-65).

As for her migraine headaches, the ALJ explained that while Hummel complained of experiencing headaches, the medical record revealed that imaging of Hummel's head and brain were all normal, and EEG studies showed only slight tonsillar etopia, which was not significant enough to be called a Chiari malformation. (Tr. 61-64). The ALJ further explained that while Hummel alleged that her disability was due to the residual effects of a concussive injury in October 2009, Hummel's treating psychologist conducted an updated neuropsychological evaluation and stated that Hummel's "pattern of complaints appeared to exceed the severity of the original injury in 2009." (Tr. 254). Additionally, the ALJ explained that a Halstead Impairment Index test and other testing were all within normal limits and mental status examinations demonstrated that Hummel had directed speech

and was of average intelligence with fair insight and judgment. (Tr. 61-62). The ALJ adequately explained her rationale in finding Hummel's migraine headaches to be a nonsevere impairment. Thus, the ALJ's assessment on this matter complied with the dictates of the law, and we find that substantial evidence supported her decision.

While Hummel argues that the ALJ erred in failing to find her carpal tunnel syndrome and fibromyalgia severe impairments at step two of the sequential evaluation process, as correctly asserted by the Commissioner, Hummel never alleged that carpal tunnel syndrome and fibromyalgia limited her ability to work. Moreover, the ALJ did not deny Hummel's claim at step two of the sequential evaluation process. Therefore, it is not necessary for the ALJ to have specifically found any additional alleged impairments to be severe because the ALJ considered the effects of these impairments at steps three through five of the sequential evaluation process. *See Naomi Rodriguez v. Berryhill*, No.1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases); *see also Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx 140, 145 (3d Cir. 2007). Thus, as the Commissioner correctly avers, any possible error at step two of the sequential evaluation process is harmless.

Hence, contrary to Hummel's contentions, the ALJ considered her impairments at step two of the sequential evaluation process, and continued to consider them throughout this process in crafting the light work RFC. Accordingly, we find no basis for disturbing the ALJ's determination as to this issue.

## B. Substantial Evidence Supports the ALJ's Consideration of the Findings of the Pennsylvania State Employee Retirement System

Next, Hummel argues that the ALJ erred in her consideration of the opinion of the Pennsylvania State Employee Retirement System. (Doc. 12, at 6). Hummel asserts that the Pennsylvania State Employee Retirement System concluded that she was disabled and that her disability status has continued for a period in excess of five years. (Doc. 12, at 6). Hummel contends:

> While it is admitted that such a finding is not binding upon the [ALJ], such a finding is evidence, if not substantial evidence, when another government agency finds the [p]laintiff to be disabled and requires at least that the [ALJ] review the findings and explain why that finding is not applicable to restrict the [p]laintiff.

(*Id*.). Additionally, Hummel argues that the ALJ failed to consider the side effects of her medication, specifically hydrocodone, which Hummel was prescribed to address her pain conditions. (*Id*.). Hummel contends

that her medication causes her confusion, which makes it difficult, if not impossible, to perform any of the jobs referenced by the VE. (*Id*.).

In response, the Commissioner argues that the evidence which Hummel references was submitted to the Appeals council, but not to the ALJ. (Doc. 15, at 12). Therefore, it cannot be used to argue that the ALJ's decision was not supported by substantial evidence. (*Id*.). Additionally, the Commissioner asserts that Hummel's argument concerning the side effects of her medication is speculative and unsupported by record evidence. (*Id*.). The Commissioner further contends that Hummel is essentially requesting that this Court re-weigh the evidence and reach a different conclusion, which the Court cannot do. (*Id*.).

As correctly asserted by the Commissioner, it has been longstanding precedent that if a claimant proffers evidence in this district court that was not previously presented to the ALJ, the district court may remand to the Commissioner, but that disposition is governed by sentence six of § 405(g). *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). Sentence six of § 405(g) provides the following:

> "[If] a claimant seeks to rely on evidence that was not before the ALJ," the Court may "remand the case to the Commissioner for consideration of that evidence under the sixth sentence of § 405(g), but only if the evidence is 'new' and

> 'material,' and only if the claimant shows good cause why it
> was not presented to the ALJ."

*Szubak v. Secretary of Health and Human Services*, 745 F.2d 831 (3d Cir.

1984); *Pennington v. Comm'r of Soc. Sec.*, 683 F. App'x 168, 170 (3d Cir.

2017). In this case, Hummel neither argues that the evidence is "new" or

"material," nor does she demonstrate "good cause" for failure to

incorporate this evidence into the record prior to her disability hearing.

Thus, because Hummel fails to satisfy the requirements of sentence six §

405(g), the Court finds no reason to disturb the ALJ's decision as to this

matter.

Lastly, Hummel makes a brief argument alleging that the ALJ

failed to consider the side effects of her medication, which she asserts

causes her confusion. (Doc. 12, at 6). The Court, however, is not

persuaded by Hummel's argument as to this issue. As the Commissioner

correctly contends, Hummel fails to identify any evidence in support of

her argument or cite to any record evidence the ALJ failed to consider

concerning this matter. Thus, because Hummel has failed to carry her

burden, we find no basis for disturbing the ALJ's determination on this

matter.

### C. Substantial Evidence Supports the ALJ's Consideration of Dr. Bermudez's Opinion

Hummel's last contention, challenges the ALJ's assignment of weight to Dr. Bermudez's opinion. (Doc. 12, at 7). Specifically, Hummel argues that the ALJ erroneously accorded "significant" weight to Dr. Bermudez's opinion because Dr. Bermudez's record review omitted Dr. Driscoll's opinion, which contained evidence that Hummel's impairments met or medically equaled listing 11.04 (Vascular Insult to the Brain). (Doc. 12, at 7-14). Additionally, Hummel asserts that the ALJ committed error in assigning "significant" weight to Dr. Bermudez's opinion because Dr. Bermudez was a single non-treating, non-examining source. (*Id.*).

Hummel argues:

> The [ALJ] [did] review Listing 11.04 and found that [Listing] inapplicable. [Listing] 11.04(a) requires a vascular insult to the brain with sensory or motor aphasia resulting in effective speech or communication persisting for at least three (3) months after the insult. [Hummel's] neurologist . . . did various testing and only the normal tests were highlighted by the [ALJ] in her decision. In fact, [Hummel] was given a test for gross motor speed performance and measure within the moderate to severe impairment range bilaterally. This was found in the medical records of Dr. Michael S. Driscoll, Ph.D., in which he also diagnosed aphasia and chronic migraines with aura. [Hummel's] motor aphasia lasted for a period of three (3) months and, in fact, would qualify her under Listing 11.04(a).

Hummel further contends:

> Dr. Driscoll also found that "data revealed significant impairment on three separate tests of selected and sustained attention in concentration." [Hummel's] learning characteristics in four repeated trials were also abnormal in that [Hummel] demonstrated very strong immediate recall, upon initial presentation, low average rate of acquisition with practice and relatively poor long[-]term retention with poor facilitation [and] response to multiple choice cueing for any of the above reasons or a combination thereof. Despite those facts, the [ALJ] below erroneously gave significant weight to the opinions of Dr. Bermudez over those opinions of the Plaintiff's treating physicians in violation of <u>Betar v. Caroline Colvin, Commissioner of Social Security Case No. 4:15-cv-00921-WMV-GBC</u>, decided August 26, 2016.

(Doc. 12, at 7-8).

In response, the Commissioner avers that the ALJ has the authority to survey and weigh the evidence and determine a claimant's RFC. (Doc. 15, at 16). In the instant case, the ALJ acted in accordance with the Commissioner's regulations and Third Circuit case law. (Doc. 15, at 13). Thus, the ALJ's decision is supported by substantial evidence. (Doc. 15, at 16).

It is clear beyond peradventure that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. The ALJ is charged with a duty to evaluate all the medical opinions in

the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer*, 186 F.3d at 429.

"A cardinal principal guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based, on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317. However, a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.' *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, we find that the ALJ did not err in assigning significant weight to Dr. Bermudez's opinion. In this case, the ALJ was confronted by a record marked by contrasting medical opinions and inconsistencies

regarding Hummel's abilities and limitations. Reconciling the discordant and conflicting threads of evidence, the ALJ assigned "significant" weight to Dr. Bermudez's opinion, "little" weight to the opinion of Dr. Driscoll, "little" weight to Dr. Timchack's opinion, and "little" weight to the opinion of Dr. Robinson. (Tr. 63-63-64). In this case, the ALJ considered the opinion of Dr. Bermudez and accorded her opinion "significant" weight. (Tr. 63). The ALJ explained that Dr. Bermudez's opinion limiting Hummel to light work was consistent with physical examinations demonstrating tenderness at multiple trigger points and neuropsychological testing showing some cognitive problems. (*Id.*). To accord Hummel all possible benefit of the doubt regarding her subjective complaints, the ALJ afforded Hummel greater postural limitations, particularly in view of imaging studies, which demonstrated some minimal spondylosis, which the ALJ concluded could be consistent with Hummel's complaints of arthralgia and joint pain. (*Id.*). The ALJ further concluded that due to Hummel's post-concussive syndrome and depression, Hummel should not be exposed to heights, hazards or loud noises. (*Id.*). Additionally, the ALJ limited Hummel to work that did not involve detailed instructions, confined her to routine repetitive tasks,

with few work changes, and no more than occasional contact with the public and coworkers. (*Id.*). Thus, the ALJ accorded "significant" weight to Dr. Bermudez's opinion.

The ALJ considered the opinion of Dr. Driscoll and accorded his opinion "little" weight. (Tr. 64). The ALJ explained that Dr. Driscoll's opinion was not supported by his own evaluation of Hummel, which showed a Halstead Impairment Index within the normal range. (*Id.*). Additionally, the ALJ explained that Dr. Driscoll administered another test that was consistent with an attentional disorder, but Hummel's performance was in the above average range on a similar test. (*Id.*). The ALJ also noted that on other attention and concentration testing, Hummel was only mildly impaired. (*Id.*). As for her social and emotional functions, the ALJ explained that Hummel demonstrated only moderate evidence of depression and anxiety with fair insight, good judgment, and coherent thought process. (*Id.*).

Moreover, in according "little" weight to Dr. Driscoll's opinion, the ALJ reasoned that Dr. Driscoll's opinion was inconsistent with contemporaneous treatment notes in November 2010 from Hummel's primary care physician, where Hummel reported, "she thinks

emotionally she has just been overwhelmed this year." (*Id.*). The ALJ also explained that Hummel reported that her medication was starting to help, and that Hummel's longitudinal mental status examinations showed depression and some remote memory problems, but otherwise demonstrated good judgment, normal mood and affect, and normal recent memory. (*Id.*). Lastly, the ALJ explained that the answer to a question on the ultimate issue of disability is one reserved to the Commissioner of the Social Security Administration. (*Id.*). Thus, the ALJ accorded "little" weight to the opinion of Dr. Driscoll.

The ALJ considered the opinion of Dr. Timchack and accorded his opinion "little" weight. (Tr. 63). The ALJ explained that Dr. Timchack did not have a large portion of the medical evidence of record available to him at the time of his review. (*Id.*). Additionally, the ALJ explained that while Dr. Timchack opined that Hummel experienced no limitations in any one area of mental functioning, the record evidence suggested that Hummel had at least some limitation, with Hummel's treating neuropsychologist noting some cognitive decline. (*Id.*). Thus, the ALJ accorded Dr. Timchack's opinion "little" weight.

The ALJ considered the opinion of Dr. Robinson—Hummel's treating physician, and accorded her opinion "little" weight. (Tr. 63-64). The ALJ explained that Dr. Robinson's opinion did not include a function-by-function analysis of the most Hummel could do, despite her limitations. (Tr. 64). The ALJ further explained that Dr. Robinson's opinion was made nearly eight years ago and only eight months after Hummel's car accident. (*Id*.). Thus, the ALJ accorded Dr. Robinson's opinion "little" weight.

The ALJ discounted some aspects of the opinions of Drs. Bermudez, Driscoll, Timchack, and Robinson in light of these contrasting opinions and findings, but given other record evidence, including Hummel's own statements. For example, Hummel testified that she could not lift more than five pounds from the waist up; she could only sit or stand for a half hour before she "locks up," requiring her to change positions; and she could only walk for approximately 20 minutes on a good day before needing to stop and rest for five to ten minutes. (Tr. 61). There were some internal inconsistencies in Hummel's testimony, however, as she also described her activities in terms that were not wholly disabling. For example, she reported that she could perform most of her personal care

with no problems; she could prepare light meals and light household chores; she could drive and shop in stores; and she could pay bills, and handle a checking account. (Tr. 177-84). As for her social activities, Hummel reported that she enjoyed walking, talking, and spending time with her grandchildren. (Tr. 181-82).

Hummel argues that the ALJ erred in according "significant" weight to the opinion of Dr. Bermudez because hundreds of pages of medical records were submitted after the date of Dr. Bermudez's review. (Doc. 12, at 7). Thus, Dr. Bermudez did not have the opportunity to review the entire medical record. (*Id.*). However, the law is clear,

> [B]ecause [S]tate agency review precedes ALJ review, there is always some time lapse between consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required.

*Chandler*, 667 F.3d at 361 (quoting SSR 96-6p (July 2, 1996)).[7]

Hummel further contends that the ALJ erroneously accorded

---

[7] SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017.

"significant" weight to Dr. Bermudez's opinion because Dr. Bermudez's record review omitted Dr. Driscoll's opinion, which contained evidence that Hummel's impairments met or medically equaled listing 11.04 (Vascular Insult to the Brain). However, the Court is not persuaded by Hummel's argument as to this issue. As mentioned *supra*,

> Only where additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required.

*Chandler*, 667 F.3d at 361 (quoting SSR 96-6p (July 2, 1996)).

In the instant case, the ALJ considered Hummel's impairments under listing 11.04 pertaining to vascular insult to the brain, characterized by A, B, or C. (Tr. 58). In pertinent part, listing 11.04A requires sensory or motor aphasia resulting in ineffective speech or communication persisting for at least three consecutive months after the insult. (Id.). Under 11.04B, a claimant must demonstrate disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least three consecutive months after the insult. (*Id.*). Lastly, 11.04C requires a

marked limitation in physical functioning and in one area of mental functioning with both persisting for a least three consecutive months after the insult. (*Id.*).

The ALJ explained, however, that physical examination demonstrated that Hummel's speech was slow, but clear with no focal deficits or slurring. (*Id.*). Additionally, the ALJ explained that the medical record demonstrated that Hummel had a normal gait and station, and did not have a marked limitation in any one area of mental functioning. (Tr. 58-59). Thus, the ALJ concluded that Hummel's post-concussive syndrome did not rise to listing level severity. (Tr. 59). The ALJ adequately explained her rationale in finding that Hummel's impairments did not meet listing 11.04, and we find that substantial evidence supported her decision. As correctly asserted by the Commissioner, it appears that Hummel is requesting that this Court re-weigh the evidence. This we may not do. *See*, *Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992))). Because we cannot re-weigh the evidence, we find the ALJ has

not erred in weighing Dr. Bermudez's opinion.

An appropriate Order follows.

Dated: August 14, 2020         ***<u>s/Joseph F. Saporito, Jr.</u>***
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge